IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| THE GUARANTEE COMPANY OF NORTH AMERICA USA, § § § Plaintiff, § § V. § § LKT & ASSOCIATES LLC, § § Defendant. § § § | No. 3:21-cv-2079-K |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

Plaintiff The Guarantee Company of North America USA ("Guarantee" or "Surety") filed a motion for summary judgment against Defendant LKT & Associates LLC ("LKT" or "Subcontractor"). *See* Dkt. No. 28.

LKT filed a response, *see* Dkt. No. 34, and Guarantee filed a reply, *see* Dkt. No. 40.

LKT filed a cross-motion for summary judgment against Guarantee. *See* Dkt. No. 31. Guarantee filed a response, *see* Dkt. No. 37, and LKT filed a reply, *see* Dkt. No. 39.

United States District Judge Ed Kinkeade has referred this motion to the undersigned magistrate judge for hearing, if necessary, and to submit proposed findings and recommendations under 28 U.S.C. § 636(b). *See* Dkt. No. 43.

The undersigned recommends that the Court deny Guarantee's motion for summary judgment and grant LKT's motion for summary judgment.

-1-

## Background

This case concerns a payment bond and sub-subcontract for a public works project. The City of Dallas (the "City" or "Obligee") contracted with RKM Utility Services, Inc. ("RKM" or "Principal") to serve as prime contractor for the Water and Wastewater Mains Installations project at 29 specified locations (the "Project"). *See* Dkt. No. 29 at 2; Dkt. No. 32 at 5. Guarantee issued a payment bond (the "Bond") to RKM for the project, which is required for most Texas public works projects by Texas Government Code Chapter 2253 or the "McGregor Act." *See id.*

RKM subcontracted with LKT for materials for the Project. *See id.* LKT ordered some of those materials from Core & Main, LP ("Core & Main" or "Supplier") through a sub-subcontract or purchase agreement. *See id.*

RKM failed to pay LKT, leaving LKT unable to pay Core & Main. *See id.* LKT made a claim against the Bond, seeking the $251,692.10 that RKM owed to LKT. *See id.* Guarantee found that LKT only perfected part of its claim. *See* Dkt. No. 29 at 2-3; Dkt. No. 32 at 5. It paid LKT $151,963.15 for invoices for materials furnished in April of 2019 in exchange for an executed release. *See id.* LKT forwarded $151,352.95 to Core & Main for its part of those materials. *See* Dkt. No. 32 at 5.

Core & Main then made a claim against the Bond, seeking $100,178.96 for the rest of the materials that it had furnished to LKT. *See* Dkt. No. 29 at 3; Dkt. No. 32 at 5. This amount was originally included in LKT's Bond claim that it was unable to perfect. *See id.* This was for invoices for materials furnished from December of 2018 to March of 2019. *See id.* Guarantee found that Core & Main perfected its claim. *See*

*id.* It paid Core & Main $100,178.96 in exchange for the execution of a partial release and assignment (the "Assignment Agreement"). *See id.* Guarantee claims that the Assignment Agreement assigned Core & Main's breach of contract claim under the sub-subcontract to Guarantee. *See id.*

After LKT refused to reimburse Guarantee for its payment to Core & Main, Guarantee sued LKT in this Court to recover on Core & Main's breach of contract claim. *See* Dkt. No. 1. The parties then filed these cross-motions for summary judgment. *See* Dkt. No. 28; Dkt. No. 31.

**Legal Standard**

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "A party asserting that a fact cannot be or is genuinely disputed must

support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." FED. R. CIV. P. 56(c)(1). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at 625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve

all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston,* 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)). "[W]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (internal quotation marks omitted).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may: (1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or (4) issue any other appropriate order." FED. R. CIV. P. 56(e).

And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Scott*, 550 U.S. at 380 (internal quotation marks and emphasis omitted). And, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.*

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and

internal quotation marks omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott*, 550 U.S. at 380 (internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g., Martin v. Alamo Cmty. Coll. Dist.*,

353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

While the Local Civil Rules do not require the parties to submit statements or counter-statements of undisputed facts, where the Defendant cites a fact that Plaintiffs do not controvert with evidence, the Court may accept it as true. *See Eversley v. MBank of Dallas*, 843 F.2d 172, 174 (5th Cir. 1988); *Bradley v. Chevron U.S.A., Inc.*, No. 2:04-cv-92-J, 2004 WL 2847463, at *1 n.2 (N.D. Tex. Dec. 10, 2004).

"When parties file cross-motions for summary judgment, [the Court] review[s] each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party." *Duval v. N. Assur. Co. of Am.*, 722 F.3d 300, 303 (5th Cir. 2013) (footnote and internal quotation marks omitted).

Here, Guarantee and LKT do not disagree with each other's characterization of the facts. And the cross-motions for summary judgment analyze the same claims.

So, while the undersigned has reviewed each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party, the undersigned will analyze the cross-motions in a combined section below.

## Analysis

**I. Guarantee is not entitled to recover on its breach of contract claim because Core & Main had no claim to assign.**

In their cross-motions for summary judgment, the parties principally disagree about (1) whether the language of the assignment was effective in assigning the claim

to Guarantee and (2) whether that assignment is against public policy. But, before determining the merits of the assignment, the Court must determine whether Core & Main had a claim to assign in the first place.

The McGregor Act requires prime contractors making public works contracts over a certain amount with a governmental entity to obtain a payment bond. TEX. GOV'T CODE § 2253.021(a). The McGregor Act intends the payment bond to be "solely for the protection and use of payment bond beneficiaries who have a direct contractual relationship with the prime contractor or a subcontractor to supply public work labor or material." TEX. GOV'T CODE § 2253.021(c)(1). This is because, unlike in private construction projects, subcontractors and suppliers are not able to place a lien on a public building or structure if they are not paid. *See Ramex Constr. Co. v. Tamcon Servs., Inc.,* 29 S.W.3d 135, 139 (Tex. App. – Houston [14th Dist.] 2000, no pet.). Payment bonds ensure that subcontractors and suppliers working on the project are paid, if not by the prime contractor, then by a surety. *See id.*

Sureties have a suretyship status with respect to payment bonds. Suretyship status can arise in any structure of agreement in which an obligee contracts for an obligation (the "underlying obligation") with a principal obligor. *See* RESTATEMENT (THIRD) OF SURETYSHIP & GUARANTY § 1 (Am. L. Inst. 1996). The principal obligor then contracts with a secondary obligor to give the obligee recourse against the secondary obligor if the principal obligor fails to complete the underlying obligation. *See id.* That secondary obligor has suretyship status. *See id.*

It is the principal obligor that ought to perform the underlying obligation or bear the cost of performance. *See id.* And so the principal obligor has a duty to reimburse the secondary obligor. *See id.* § 22. If one of these obligations is performed, the obligee is not entitled to performance of the other. *See id.* § 22(1)(b). Finally, a secondary obligation may have intended beneficiaries, who are entitled to enforce the secondary obligation against the surety. *See id.* § 69 cmt. c.

Payment bonds fit well into this structure. They are an agreement between a governmental entity, a prime contractor, and a surety. The prime contractor, or principal obligor, takes responsibility to ensure that the subcontractors and suppliers are paid and shields the governmental entity, or obligee, from that liability. The surety, or secondary obligor, agrees to pay the subcontractors and suppliers in the instance that the prime contractor is not able to pay. Subcontractors and suppliers make claims on the payment bond, and, if the notice requirements are met, the claim is perfected, and the surety pays for the work or materials on which the perfected claim is based in the prime contractor's stead.

Here, when Core & Main perfected its claim against the Bond, it used its right as an intended beneficiary of the Bond to enforce the secondary obligation, or Guarantee's agreement to pay subcontractors and suppliers for the work and materials that RKM ought to have paid for. Even though there is no contract between RKM and Core & Main, the fact that the Bond covered contractors with a direct contractual relationship to a subcontractor made RKM and Guarantee responsible for ensuring the payment of the contract between LKT and Core & Main.

And so Guarantee's argument that its payment to Core & Main for the Bond claim left LKT's obligation to Core & Main untouched misses the mark. The Bond claim is based on the very invoices underlying the contract between LKT and Core & Main. Guarantee admits that its payment was for those invoices. The Assignment Agreement between Guarantee and Core & Main states that Guarantee's payment to Core & Main "represents payment for all invoices … for the above referenced project." Dkt. No. 30 at 28.

The payment for these invoices made Core & Main whole and nullified any damages that would have been an essential part to a breach of contract claim. Without damages, Core & Main had no claim to assign to Guarantee.

Guarantee argues that this result would mean that "no assignment by an unpaid contracting party granting its right to prosecute a breach of contract claim in exchange for payment from a third party would ever be valid." Dkt. No. 37 at 1. This is not the case. Guarantee had a statutory obligation to pay the invoices as RKM's surety. Its position as RKM's surety with this statutory obligation means that Guarantee's payment to Core & Main was making Core & Main whole for the unpaid invoices that formed the basis of its contract with LKT. This reasoning is not applicable to the general case of a third party paying an unpaid contractor for the right to prosecute its breach of contract claim.

Guarantee also argues that this result would expand the McGregor Act into an act that "absolves first-tier subcontractors of their contractual duties to pay second-tier subcontractors." *Id.* This is also not the case. Subcontractors are still liable to

-11-

their sub-subcontractors through the contract between them. Only when the surety makes a bond claim payment to the sub-subcontractor that fulfils that contract is the subcontractor no longer liable under that contract.

Guarantee has not shown beyond peradventure that it has a breach of contract claim against LKT. And Guarantee has not shown a genuine issue of material fact as to whether it has a breach of contract claim against LKT.

## II. Guarantee is not entitled to recover under a theory of quantum meruit.

Guarantee makes a claim for quantum meruit in the event that "the Court concludes that the purchase order is not a valid contract." Dkt. No. 28 at 6. "Generally, a party may recover under quantum meruit only when there is no express contract covering the services or materials furnished." *Matter of KP Eng'g, L.P.*, 63 F.4th 452, 456 (5th Cir. 2023) (citing *Vortt Exploration Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)).

The Court would not, if it adopts the reasoning and recommendation above, find the sub-subcontract to be invalid. And neither party argues that the sub-subcontract is invalid.

And so Guarantee has not shown beyond peradventure that it is entitled to recovery under a theory of quantum meruit. And Guarantee has not shown a genuine issue of material fact as to whether it can recover under a theory of quantum meruit.

### III. Guarantee is not entitled to attorneys' fees.

Guarantee requests costs of court and attorneys' fees. But none of Guarantee's claims should survive summary judgment. And a plaintiff is not entitled to costs of court or attorneys' fees if their claims cannot survive summary judgment. *See Sorenson v. Raymond*, 532 F.2d 496, 500 (5th Cir. 1976). And so Guarantee is not entitled to costs of court or attorneys' fees.

### Recommendation

The Court should deny Plaintiff The Guarantee Company of North America USA's motion for summary judgment [Dkt. No. 28] and grant Defendant LKT & Associates LLC's motion for summary judgment [Dkt. No. 31] and dismiss Plaintiff The Guarantee Company of North America USA's claims with prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or

adopted by the district court, except upon grounds of plain error. See *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: August 1, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE